**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JEREMY E. BIGWOOD, | ) |
| | ) |
|         Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 06-0635 (PLF) |
| | )     (ECF) |
| UNITED STATES AGENCY FOR | ) |
| INTERNATIONAL DEVELOPMENT, | ) |
| | ) |
|         Defendant. | ) |
| | ) |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**

**Introduction**

The United States Agency for International Development ("USAID" or the "Agency") respectfully submits this Reply in Support of its Motion for Summary Judgment and In Opposition to Plaintiff ("Plaintiff")'s Cross Motion for Summary Judgment ("Cross Motion"). As explained herein, USAID should be granted summary judgment because Plaintiff's arguments are misplaced or based on improper interpretation of the law. First, Plaintiff failed to exhaust his administrative remedies as to that portion of his request addressing internal annual and quarterly reports and analyses, memoranda, or other documents relating to its funding of projects and organizations in Venezuela from 1998. Second, disclosure of the names of organizations and the redacted personal identifying information of their employees would result in direct and dangerous intrusions into the employees' privacy interest. For example, individuals, if identified, will be intimidated, harassed, verbally assaulted, wrongfully imprisoned, and possibly even physically harmed

1

if the Venezuelan authorities and their sympathizers are able to identify Venezuelan citizens aided with U.S. government funds for development programs.  Hence, the application of exemption (b)(6) of the Freedom of Information Act (FOIA) is proper.  Additionally, it should be noted that Plaintiff does not dispute the Agency's statement of material facts not in dispute.  Cross Motion at 4.  USAID's Motion for Summary Judgment should be granted and Plaintiff's Cross Motion should be denied.

## Argument

### I.   Plaintiff Failed to Exhaust His Administrative Remedies When He Did Not Appeal the FOIA Office Decisions of September 9, 2004 and March 25, 2005.

Plaintiff claims USAID "failed to provide internal annual and quarterly reports and analyses, memoranda, or other documents relating to its funding of projects and organizations in Venezuela from 1998.  To date USAID has never advised Bigwood of the reasons for its failure to provide such documents."  Cross Motion at 1-2.  That assertion is incorrect because the Agency informed Plaintiff why it was obliged to withhold certain information and advised him of his right of appeal on two occasions.  Plaintiff chose not to exercise those rights, thereby failing to exhaust his administrative remedies.

When a FOIA plaintiff attempts to obtain judicial review without properly undertaking fully and timely administrative exhaustion, the lawsuit is subject to ready dismissal because "exhaustion of administrative remedies is a mandatory prerequisite to a lawsuit under FOIA."  Wilbur v. CIA, 355 F.3d 675, 676 (D.C. Cir. 2004) (per curiam) (citing Oglesby v. United States Dep't of Justice, 920 F.2d 57, 61-64, 65 n.9 (D.C. Cir. 1990)).  See also Makuch v. FBI, 2000 U.S. Dist. LEXIS 94865 (D.C. Cir. 2000); Arbitraje Casa De Cambio v. United States Postal Serv., 297 F. Supp. 2d 165, 170 (D.C. Cir. 2003); Jackson v. United States,  730 F.2d 808, 809 (D.C. Cir. 1984).  Alternatively, this Court has

2

held when a plaintiff fails to exhaust his administrative remedies he has "failed to state a claim on which relief may be granted with respect to the unexhausted claim or claims by failing to demonstrate that a necessary precondition to judicial review of those claims has been satisfied." Johnson v. District of Columbia, 368 F. Supp. 2d 30 (page cite unavailable) (D.D.C. 2005). See also Kong On Import & Export Co. v. United States Customs & Border Prot. Bureau, 2005 U.S. Dist. LEXIS 12779,4 (D.D.C., June 20, 2005, Decided) (failure to exhaust administrative remedies cases should be dismissed under 12(b)(6)); Coleman v. Pension Benefit Guar. Corp., 94 F. Supp. 2d 18, 21 (D.D.C. 2000) (12(b)(6) is basis for dismissal for unexhausted administrative remedies).  Courts have also noted that the requirement of exhaustion of administrative remedies may not be waived except in the most exceptional of circumstances.  Johnson, 368 F. Supp. 2d. 30.

In this case, the Agency's FOIA office sent an interim response to Plaintiff, on September 9, 2004, which included five award documents, consisting of one contract and four cooperative agreements.  *See* Exh. A, Paskar Supplemental Declaration ("Paskar Supp. Decl.") Attachment 1.  The documents totaled 166 pages.  FOIA Exemption (b)(4) was invoked for some information contained in the awards.  The Plaintiff was provided notice of his appeal rights in the response.  Id.  USAID instructed Plaintiff that he had to appeal the response within thirty days from the date of the response or thirty days from the date when USAID notified him that it has completed action on his request.  Id.  He never exercised his right to appeal this response.  Paskar Supp. Decl. para. 3.

On March 25, 2005, USAID sent its final response.  Paskar Supp. Decl., Attachment 2. The Agency stated that the response was the final one.  Through the FOIA office, the Agency disclosed to Plaintiff a grant agreement and modification and quarterly reports and

3

work plans submitted by awardees. Portions of these documents were withheld under FOIA Exemptions (b)(4) and (b)(6). Eight internal USAID documents--consisting of five memoranda and three internal briefing/strategy programs discussion papers--were released. USAID invoked FOIA Exemption (b)(6) in one instance within one of the internal memoranda. Four internal memoranda were withheld in their entirety under FOIA Exemption (b)(5). The Plaintiff was notified of his appeal rights. Again, he was instructed that he had to appeal the response within thirty days from the date of the response letter. Id. The Plaintiff never exercised his right to appeal this response. Paskar Supp. Decl. para 4.

Having failed to meet the "mandatory prerequisite" to pursue his appeal rights to complete the administrative process, Plaintiff may not attempt to engage this Court now in these matters. Accordingly, that portion of his Complaint, addressing internal annual and quarterly reports and analyses, memoranda, or other documents relating to its funding of projects and organizations in Venezuela from 1998, should be dismissed. Fed. R. Civ. P. 12(c).

> I. **Withholding the Names of Employing Organizations is Proper Pursuant To Exemption (b)(6) to Ensure the Safety of Individuals.**

Withholding the names of employing organizations in Venezuela that receive USAID funding is proper pursuant to exemption (b)(6) of the FOIA because disclosing the names or identifying information of these small organizations is tantamount to identifying their employees. See Exh. B, Porter Supplemental Declaration ("Porter Supp. Decl."),[1]

---

[1] Plaintiff seems to suggest that Mr. Porter's affidavits should not be considered by the Court because Mr. Porter allegedly lacks first-hand knowledge of the situation in Venezuela. Cross Motion at 8-9. In certain circumstances, opinions or conclusions may be asserted in agency affidavits, especially in cases where sensitive information is at issue. See e.g., Ctr. For Nat'l Sec. Studies v. United States Dept. of Justice, 331 F.3d 918, 927 (D.C. Cir. 2003) cert denied, 124 S. Ct. 1041 (2004).

paras. 2 and 3.  Contrary to Plaintiff's assertions, (1) USAID does not seek to extend the protections presently afforded by the exemption; (2) the unwarranted invasion of privacy is a primary effect of the disclosure at issue; and (3) the mere fact that Plaintiff does not specifically request the names of individuals does not negate the fact that the individual's privacy is directly implicated by his request.  All of Plaintiff's assertions are fatally flawed.

### A.  Exemption (b)(6) Permits the Withholding of Names to Protect Privacy Interests.

USAID does not seek to extend the privacy protections afforded by exemption (b)(6). Plaintiff's concern that the privacy interests of an organization or corporation are outside the scope of the exemption is a red herring. Cross Motion at 7 (citing Washington Post Co. v. Department of Agriculture, 943 F. Supp. 37 n.6 (D.D.C. 1996)).  USAID did not withhold the names of the employing organizations in order to protect the interests of the organizations. Instead, the Agency sought to avoid the disclosure of the names of various small organizations in order to preserve the safety of individuals whose interests clearly fall within those intended to be protected by exemption (b)(6).  Porter Supp. Decl., para. 3.  The Supreme Court has made clear that information applicable to a particular individual, meets the threshold requirement for exemption (b)(6) protection.  Dept. of State v. Washington Post Co., 456 U.S. 595, 601-02 (1982).  This threshold is met where the information applies to any particular, identifiable individual. See also Larkin Law Firm, P.C. v. FTC, 352 F.3d 1122, 1123 ($7_{th}$ Cir. 2003) (finding that consumer complaints filed with the FTC "clearly fall[] within the exemption"), cert. denied, 124 S.Ct. 2848 (2004); Sherman v. Dep't of the Army, 244 F.3d 357, 361 ($5_{th}$ Cir. 2001) (recognizing that the "Supreme Court has interpreted exemption 6 'files' broadly to include 'information which applies to a particular individual'").  That standard is readily satisfied in the instant matter.

**B. Unwarranted Invasion of Privacy is a Primary Effect of the Requested Disclosure.**

A limited number of identifying references to particular Venezuelans has been redacted. Plaintiff mistakenly characterizes the individuals affected as an "unknown number of anonymous individuals" and posits that the Agency's withholding is a sham, motivated by an intent to conceal government operations. Cross Motion at 17. On the contrary, the Vaughn index lists approximately 202 redactions, containing: (1) approximately 131 names and/or pieces of identifying information concerning individuals; (2) approximately six names ad/or pieces of identifying information concerning partner organizations, and (3) approximately 65 names and/or pieces of identifying information concerning grantee organizations.  Paskar Decl., Attachment 8 (to Opening Brief) "Vaughn Index."  Redacted identifying information included the names, addresses, titles, affiliations, and signatures of individuals, and the names, addresses, seals, and logos of grantee organizations. Id.  Disclosure of the names and addresses of particular individuals directly identifies their location to anyone seeking reprisal.  The Vaughn index establishes that the withholding concerns a concrete number of references to individuals. Withholding the names of employing organizations on behalf of a finite number of individuals who fear reprisal demonstrates the Agency's scrupulous adherence to exemption (b)(6) in both letter and spirit.  The exemption has not been expanded, merely preserved.

Similarly, disclosure of the names and addresses of entities such as grantees and partners can easily lead to the identification of the individuals that make up the small staff of those organizations via public information domains such as internet search engines, local phone directories, and visits to the physical premises of grantee organizations.  Because the average size of the funded organizations is three to four, disclosing the names of the

organizations <u>automatically</u> identifies a finite group of individuals. Exh. B, Porter Supp. Decl., para. 2. Indeed, all of the organizations whose names have been withheld employ ten or less individuals. <u>Id</u>. Plaintiff claims that the reprisals and possible physical harm that he employees will face is a "secondary effect" of the disclosure and therefore outside the ambit of exemption (b)(6) relying on <u>National Ass'n of Retired Federal Employees v. Horner</u>, 879 F.2d 873 (D.C. Cir. 1989). Horner is inapposite, however. In <u>Horner</u>, the court clarified that in virtually every case in which a privacy concern is implicated, someone must take steps after the initial disclosure to bring about the untoward effect: "[d]isclosure does not, literally by itself, constitute a harm; it is the requester's (or another's) reaction to the disclosure that can sting. This is only more obvious where disclosure of the information invades someone's privacy not because it is embarrassing but because it invites unwanted intrusions." <u>Id</u>. at 878. The court also stated that "where there is a substantial probability that disclosure will cause an interference with personal privacy, it matters not that there may be two or three links in the causal chain." <u>Id</u>. The proper concern is not "the number of steps that must be taken to get to the threatened effect" but is instead the likelihood that the effect will ever come to pass. <u>Id</u>. Interestingly, Plaintiff wholly ignores <u>Lepelletier v. FDIC</u>, 164 F.3d 37, 48 (D.C. Cir. 1990), a later decided case also cited by the Agency in its opening brief, where the court found extraordinary circumstances exist where individuals whose privacy the government seeks to protect have a "clear interest" in the withholding of the information. A person avoiding harm to his or her life or liberty has a clear interest in the withholding of such information. Such interest is an extraordinary circumstance tilting the balance in favor of withholding the identifying information.

7

Here, as in <u>Horner</u>, there is little reason to doubt that the unwarranted invasion feared by the individuals is likely to occur, especially in light of the particular political climate in which Venezuelan employees are working. Exh. B, Porter Supp. Decl., para. 4(a) and (b). The team leader for USAID's Latin America and the Caribbean Office of Transition Initiatives, Russell Porter states in his affidavit (attached to the Agency's opening brief) that Venezuelans have suffered the following types of harm due to their connection with the United States government: (1) Within days of information posted on the internet identifying grantees of the congressionally funded National Endowment of Democracy ("NED"), grantees were harassed, received threats, and were subject to court action for treason (Porter Decl., paragraph 9); (2) Venezuelan U.S.-funded grantees received threatening phone calls, and suffered both public and private threats (Porter Decl., paragraph 10); (3) Director of a USAID-funded human rights education project was questioned, intimidated, and watched by political police (Porter Decl., paragraph 11); (4) the Director of a pre-school that benefited from a USAID social impact project was threatened with having all future funding from the Venezuelan government suspended (Porter Decl., paragraph 11); (5) Venezuelan university students subjected to leaf-letting campaign stating that "'participants in the USAID-funded program would be identified and judged by the University community'" (Porter Decl., paragraph 17); and (6) Development Alternative Incorporated staff members were followed by and taunted as "CIA agents" and verbally threatened with office raids and monitoring. (Porter Decl., paragraph 18). The reprisals feared due to the disclosure of the names of organizations are not a "secondary effect" but rather a real and direct consequence of the disclosure. The Venezuelan authorities and their sympathizers have committed atrocities in the past. (Porter Decl., Exh.

B, <u>State Department Country Report on Human Rights Practices in Venezuela</u> at 6-7, "Members of the political opposition received death threats and were the victims of intimidation by government supporters. Security forces were accused of committing extrajudicial killings . . . . The Chief Prosecutor reported that death squads or police forces killed 1,541 people in 10 states [between 1998 and 2003] ." <u>See also</u> Exhibit F <u>State Department Country Report on Human Rights Practices in Venezuela</u> at 39, "Police, soldiers, and government supporters killed several persons at anti-government demonstrations … security forces committed unlawful killings…".) Release of the names currently withheld will undoubtedly lead ordinary Venezuelans to suffer harassment, threats, verbal assaults and physical reprisal and more.

### i. Segregability

The Agency's redactions have at most minimal effect on the public's ability to learn how the United States government functions. Prior substantial disclosures by the Agency in response to Plaintiff's request reveal the nature and details of the operations of USAID in Venezuela. There are only approximately 202 redactions, each of which is only a few words in length, in over 500 pages of documents already disclosed. Moreover, the redactions concern only personal identifying information of individuals and grantees and in no way obstruct substantive information about the Agency's goals, projects and activities in Venezuela. Contrary to Plaintiff's assertions, the Agency did not irresponsibly redact documents in an effort to avert public access to information about United States government's operations abroad. Cross Motion at 9. Instead, the Agency complied with FOIA segregability obligations requiring the disclosure of "any reasonably segregable portion of a record" after appropriate application of the Act's nine exemptions. FOIA, 5

U.S.C. § 552(b) (2000).  See also Schiller v. National Labor Relations Board, 964 F.2d 1205 (D.C. Cir.1992).  Balancing the nature and likelihood of the privacy intrusion in this case with the minimal public utility derived from disclosing the names of the funded organizations requires non-disclosure.

Plaintiff himself recognizes that endangering individuals is a valid limitation to disclosure pursuant to FOIA.  Cross Motion at 9.  The nature of the potential intrusion in this case is harassment, including physical reprisals and attacks against ordinary Venezuelan civilian employees of the organizations in question.  The instant matter is easily distinguished from the typical FOIA request cases in which the government seeks to protect United States citizens and high ranking government officials from embarrassing disclosures. See e.g. Falzone v. Navy, No. 85-3862, 1986 U.S. Dist. LEXIS 17349 (D.C. Cir. Nov. 21, 1986).  Plaintiff's reliance on Schell v. Department of Health and Human Services is woefully misplaced.  In Schell, negative reaction in the form of embarrassment or criticism resulting from disclosure of memorandum issued by a government employee was insufficient to establish an unwarranted invasion of privacy.  In the instant case, every redaction with the exception of only one protects ordinary Venezuelan civilians against the potential danger of physical reprisals and attack.[2]  In fact, the Agency has released all identifying information of United States organizations.  Paskar Decl., Attachment 8 at 46, 53, and 63.

Moreover, Plaintiff wrongly asserts that a privacy interest is "non-existent" without evidence of actual harm previously suffered by individual recipients of U.S. government

---

[2] See Paskar Decl., Attachment 8 at 64 where "Name of a non-U.S. official with the grantee" refers to one redaction of an individual whose Venezuelan citizenship the Agency cannot confirm.

10

funding. Cross Motion at 15. First, he fails to cite authority stating that evidence in the form of past reprisal is necessary to meet the evidentiary standard of establishing a privacy interest. It is well established that a very slight privacy interest is sufficient. See e.g. United States Dept. of Defense v. Fed. Labor Relations Bd., 510 U.S. 487, 500 (1994) ("Because a very slight privacy interest would suffice to outweigh the relevant public interest, we need not be exact in our quantification of the privacy interest. It is enough for present purposes to observe that the employees' interest in nondisclosure is not insubstantial."). Second, the Agency does, in fact, provide abundant evidence of past reprisal. For example, directors of an election watchdog group received threats and the Venezuelan government initiated court actions against them when information about their funding by the U.S. government was publicly displayed on the internet. Porter Decl., para. 9. Also, evidence that the director of a USAID-funded human rights education project was questioned, intimidated, and watched by political police, coupled with evidence that Venezuelan university students have been subjected to a leaf-letting campaign stating that "participants in the USAID-funded program would be identified and judged by the University community" together establish significantly more than the required a slight privacy interest. Porter Decl., paras 10 and 17.

    **C. Plaintiff's Request for Names of Organizations is Tantamount to a Request for   the Names of Individuals Employed by the Organizations.**

The Plaintiff mistakenly states that the disclosure does not fall within exemption (b)(6) because he does not specifically request the names of individual employees. Cross Motion at 13. While it may be true that the Plaintiff does not request the names of employees of the organizations, the disclosure requested automatically discloses the identity of individuals, as detailed in section II(B), supra. The Plaintiff does not have to

11

specifically request the names of easily identifiable individuals for their privacy interests to be directly implicated. United States Dept. of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 771 (1989) ("Whether an invasion of privacy is warranted cannot turn on the purposes for which the request for information is made.").

## **CONCLUSION**

For the foregoing reasons, withholding the names of employing organizations in Venezuela that receive USAID funding is proper pursuant to exemption (b)(6) of the FOIA. The principle of government transparency underlying FOIA has been adhered to without causing undue suffering to ordinary individuals in Venezuela. Accordingly, the Court should enter summary judgment in favor of the Agency and deny Plaintiff's Cross Motion for Summary Judgment.

Dated: July 26, 2006.

Respectfully submitted,

_____/s/_____
KENNETH L. WAINSTEIN
D.C. Bar #451058
United States Attorney

\_\_\_\_\_/s/_____
RUDOLPH CONTRERAS
D.C. BAR #434122
Assistant United States Attorney

_____/s/_____
MERCEDEH MOMENI
Assistant United States Attorney
Civil Division
555 4th Street, N. W.
Washington, D.C.  20530
(202) 305-4851

*Of Counsel:*
John B. Alumbaugh, Senior Counsel
United States Agency for International Development
Washington, D.C. 20004

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 26th day of July, 2006, I caused the foregoing Reply in Support of Motion for Summary Judgment and Opposition to Plaintiff's Cross Motion, to be served on Plaintiff, via electronic mail.

                       /s/
                     _____
                     MERCEDEH MOMENI
                     Assistant United States Attorney
                     Civil Division
                     555 4th Street, N. W.
                     Washington, D.C.  20530
                     (202) 305-4851