UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEREMY E. BIGWOOD,<br><br>       Plaintiff,<br><br>v.<br><br>UNITED STATES AGENCY FOR<br>INTERNATIONAL DEVELOPMENT,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 06-0635 (PLF)<br>)   (ECF)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF'S REPLY IN SUPPORT OF ITS CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SUBSEQUENT REPLY

### INTRODUCTION

Jeremy Bigwood ("Plaintiff") respectfully submits this Reply in Support of his Cross Motion for Summary Judgment and in Opposition to Defendant's, the United States Agency for International Development ("USAID" or the "Agency"), Motion for Summary Judgment and subsequent Reply in Support of its Motion for Summary Judgment and in Opposition to Plaintiff's Cross Motion for Summary Judgment. Plaintiff Bigwood should be granted summary judgment because Defendant's arguments are flawed and based on a misapplication of the law.

The Freedom of Information Act (FOIA) mandates that federal government agencies provide records—both electronic and paper—to any person who asks for them, provided the records do not fall into one of the nine enumerated exempt categories. (5

RECEIVED
SEP 20 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

U.S.C. 552; amended Pub.L.No. 104-231, 110 Stat. 3048; 1996.) The records sought by Bigwood do not fall under any of the exemptions to FOIA. U.S.A.I.D. meets the definition of "agency" whose records must be open under FOIA:

> any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the government…or any independent agency.

(5 U.S.C. section 552 (f)

- Defendant USAID has dangerously abused Freedom of Information Act (FOIA) Exemption (b)(6) by wrongfully using it to protect the "privacy rights" of entities, organizations and corporations, and illegally expanding the application of Exemption (b)(6).

- USAID failed to substantiate with credible evidence its arguments that individuals would be harmed if information about the entities it finances in Venezuela were disclosed, as Bigwood has asked in his FOIA requests. According to USAID, certain unnamed and anonymous individuals would be "intimidated, harassed, verbally assaulted, wrongfully imprisoned and possibly even physically harmed" if Bigwood's FOIA request was fulfilled. USAID has only presented second-hand, prejudiced opinions, and casually-researched news editorials and stories to attempt to persuade the Court of its argument. USAID's argument is not founded in law or fact and should be denied.

USAID failed to demonstrate why the release of the names of the organizations it finances in Venezuela, Bigwood requested, would endanger the unnamed, anonymous

employees of these organizations. Other United States Government funding agencies, such as the National Endowment for Democracy (NED), have continued to provide Bigwood with such information. USAID incorrectly asserts that Bigwood failed to exhaust his administrative remedies regarding his FOIA request made to the Agency for "[d]ocumentation of USAID funding of any projects and organizations or other entities in Venezuela from 1998 to the present," and "any USAID analysis of the situation in Venezuela from 1998 to the present."

Plaintiff Bigwood (who is an individual and not an entity) appealed to USAID twice, and received a Final Letter from the Agency on November 9th, 2004, which explicitly stated that the letter was USAID's final decision. The letter advised Bigwood if he wished to pursue the matter further, he could do so through a judicial review.

Defendant USAID has improperly and portentously applied Exemption (b)(6) of the FOIA in its misguided attempt to protect rights that have no existence at law or in fact-- the "privacy rights" of organizations and entities. USAID's invocation of Exemption (b)(6) does not comply with applicable standards, it abuses the cloak of the need for government secrecy to conceal from public scrutiny any activity of public organizations engaging in the promotion of democracy. There is absolutely no valid legal or moral reason why such open activities should receive the same protections afforded to those agencies and institutions that serve the interests in national security. The requests made under FOIA law by Plaintiff Bigwood do not infringe the privacy rights of any individual. Bigwood's asks this court to grant this Cross-Motion for Summary Judgment, and deny USAID's Motion for Summary Judgment.

# ARGUMENT

I. **USAID VIOLATES THE FREEDOM OF INFORMATION ACT AND ABUSES AND DENEGRATES EXEMPTION (b)(6) BY WITHHOLDING THE NAMES OF ORGANIZATIONS IT FUNDS IN VENEZUELA BASED ON AN ALLEGED VICARIOUS PRIVACY PROTECTION OF UNKNOWN INDIVIDUALS**

The application of FOIA Exemption (b)(6) by USAID to withhold the names of organizations and entities it finances in Venezuela is a clear and blatant violation of FOIA law, and of all legal standards regarding privacy rights. Corporations, organizations, and non-persons do not enjoy the same privacy rights and protections under the law as sentient human beings. The language of Exemption (b)(6) is straightforward in its application to protect the privacy rights of persons, not of corporations, or organizations. The FOIA, at 5 U.S.C. § 552 (b)(6), sets forth an exemption for "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of *personal privacy*." [emphasis added].

A. **Exemption (b)(6) Does Not Protect Privacy Interests of Organizations, Businesses, Entities or Corporations. Their size or structure is not relevant to application of Exemption (b)(6)**

The law is clear on this issue. Exemption (b)(6) cannot be applied to protect the "privacy rights" of organizations or corporations. Only individuals have cognizable privacy interests. "[C]orporations, businesses and partnerships have no privacy interest whatsoever under Exemption 6." See *Washington Post v. Department of Agriculture*, 943 F. Supp. 31 at 37 n. 6 (D.D.C. 1996); See also *Sims v. CIA (I)*, 642 F.2d 562, 572 n.47 (D.C. Cir. 1980); *National Parks & Conservation Association v. Kleppe (National Parks II)*, 547 F.2d 673, 685 n.44 (D.C. Cir. 1976); Cf. *Hill v. Department of Agriculture*, 77 F. Supp. 2d 6, 8 (D.D.C. 1999). USAID beats around the bush by mischaracterizing its

actions; claiming that it is not extending the protections of Exemption (b)(6) to protect organizations' and corporations' putative privacy rights, when that is, in fact, precisely what it is doing. Defendant insults the intelligence of the Court and profoundly misinterprets the letter of the law when it attempts to convince the Court that the smaller the entity, the more rights as a "person" it should have.  Such a notion shows a misunderstanding of the foundations of the law of individuals as opposed to the law of organizations or corporations.  Defendant improperly reasons that since the average size of the organization it funds is three to four employees, disclosing the name of the entity is tantamount to identifying its employees. See Reply Argument, page 4, paragraph 3

[I. **Withholding the Names of Employing Organizations is Proper Pursuant To Exemption (b)(6) to Ensure the Safety of Individuals.** Withholding the names of employing organizations in Venezuela that receive USAID funding is proper pursuant to exemption (b)(6) of the FOIA because disclosing the names or identifying information of these small organizations is tantamount to identifying their employees." See Exhibit B, Porter Supplemental Declaration ("Porter Supp. Decl."), paragraphs. 2 and 3 ].

Such an argument, if accepted, could be used to justify treating corporations and entities as persons under the law.

While USAID claims the average size of the organization it funds is three to four employees, Consorcio Justicia (Justice Consortium), one of the entities it finances, is a well known Venezuelan non-governmental organization with dozens of employees. Consorcio Justicia, on its webpage, www.consorciojusticia.org, advertises its funding from USAID's Venezuela program ("VICC").  So do most of the entities that receive such funding around the world.  In fact, many USAID-funded NGOs in Venezuela say in

5

their promotional and program material that they are funded by USAID. Much of the information USAID seeks to "protect" is already public. Therefore, USAID's argument that the disclosure of the names of the groups it funds would somehow endanger the individuals employed by the groups is indefensible. In the present case, Defendant is engaging in an unsuccessful attempt to impose inapplicable secrecy protections on an agency whose activities do not officially fall under the category of "National Security."

Another entity that receives funding from USAID in Venezuela is the organization Súmate, ("Join Up" in Spanish). It claims on its webpage, www.sumate.org, that it has tens of thousands of members and volunteers throughout the country. This organization also publicly states that it receives financing from USAID and other United States Government entities. Yet USAID's states -- inaccurately -- that the organizations it funds in Venezuela are composed of a mere three to four persons. A poor precedent would be set if small organizations were treated as "persons" under the law for the purposes of privacy protections. Who would determine how many people an organization has to employ in order to be entitled to such privacy protections? If USAID claims an "average of three to four" employees are in an organization, does that mean that those entities employing 100 or 1000 are also entitled to such treatment? And what about 12 employees, or 25? Are those considered small organizations? This is a path the Court should not take.

The U.S. public will interested to learn, as Mr. Russell Porter alleges (see Defendant's Exhibit. B, Porter Supplemental Declaration; "Porter Supp. Decl."), that USAID is giving away hundreds of thousands, or even millions of dollars, to groups of an "average of three to four" persons living in Venezuela. In Venezuela, the average per

6

capita yearly earning is only $6,100.00 (according to the *CIA World Fact Book*, 2005). This is clearly far too much money to be going to an "average of three to four" persons. The public interest in knowing such facts, which is the purpose of FOIA, is yet another reason that USAID must release the withheld material to Bigwood.

Plaintiff requests that the Court consider two outcomes that are likely to occur if USAID were to win the case before the Court: 1) withholding this type of information would grossly expand Exemption (b)(6) to encompass other entities in local government; and 2) would convert USAID, a public entity, into an agency with a level of secrecy similar to the Central Intelligence Agency ("CIA").

An expanded Exemption (b)(6), encompassing entities, organizations and corporations would set an illogical precedent for other entities in the Federal, State and local governments. In such a situation, for instance, journalists working at a city newspaper would not be able to use the FOIA to determine which companies were employed by the city to pick up the garbage, or any other work carried out by contractors. Public oversight, which the legislature intended to privilege in its framing of FOIA, would be quashed by a broadly-interpreted Exemption (b)(6).

A massively expanded Exemption (b)(6), which would include organizations and corporations, would render USAID no longer a "civilian" agency, but rather an agency more on par with the intelligence agencies, such as the CIA or National Security Agency ("NSA"). This would have severe repercussions for USAID personnel working in volatile situations abroad. Belligerents would consider USAID employees as spies, and treat them accordingly. USAID has far more to lose by withholding this information than it has to gain. By withholding information on the entities, organizations and corporations

that it funds, USAID is transformed from a civilian to a clandestine service. In his first Declaration, Mr. Porter of USAID's "Office of Transition Initiatives," *claims* one of his staff members had, on a single occasion, been accused of working for the CIA by some Venezuelans on the street. The alleged beliefs of the Venezuelans may not have anything to do with the present case. In Latin America, it is a common assumption based on almost sixty years of history that employees of obscurely-named offices of the U.S. government are indeed CIA officers. It should be noted that it is perfectly legal for CIA officers, both inside the U.S. and abroad to identify themselves as working for other branches of government. Therefore, in this case, how could we possibly know that the staff member in question was *not* a CIA officer working under the cover of another U.S. government agency?

Additionally, the Venezuelans could have mistaken the "Office of Transition Initiatives" (OTI) for another USAID office called the "Office of Public Safety" (OPS). USAID's Office of Public Safety initiated operations in Latin America during the early 1960s. While its overt mandate was to train firemen and police officers in foreign countries, it was simultaneously a covert CIA operation. In other words, OPS officials wore two hats. Those of USAID and those of the CIA. OPS officers set up death squads, oversaw torture and disappearances, rigged elections, propped up antidemocratic regimes and destabilized democratic ones throughout Latin America and elsewhere until the mid-1970s. Congress cut off OPS's funding because of revelations about such activities. It should not be surprising that foreigners might also confuse the two offices, since there are even internal USAID documents written by USAID officials comparing them, for instance, the one entitled, 'Exorcizing the Demons of the Past." [Exhibit A]

It would be wise of the Court to prevent such a negative misconception of USAID, which undertakes humanitarian funding missions around the world.

### B. There is No Unwarranted Privacy Violation in this Matter

Plaintiff Bigwood has never requested the names or personal information for individuals. The initial and revised FOIA requests were meticulously clear in requesting information pertaining to any funding of *organizations* and *entities* in Venezuela by USAID. The subsequent Cross Motion demonstrated that Bigwood is not asking the Agency to reveal any individuals' names in the responsive documents. USAID itself claims in its Reply that the "Supreme Court has made clear that information applicable to a ***particular individual***, meets the threshold requirement for Exemption (b)(6) protection." *Department of State v. Washington Post Co.*, 456 U.S. 595, 601-02 (1982) (emphasis added). Defendant erroneously claims that this threshold is met in the present case. The threshold is met where the information only applies to a particular, identifiable individual. See also *Lakin Law Firm, P.C. v. FTC*, 352 F.3d 1122, 1123 (7th Cir. 2003), cert. denied, 124 S.Ct 2848 (2004); *Sherman v. Department of the Army*, 244 F.3d 357, 361 (5th Cir. 2001)(recognizing that the "Supreme Court has interpreted Exemption 6 'files' broadly to include 'information which applies to a particular individual.'"). That standard is clearly **not** satisfied in the present case. In the present matter, there are no particular, identifiable individuals involved. Hundreds, if not thousands of anonymous individuals perhaps working for the more than sixty organizations funded by USAID in Venezuela may be involved. These anonymous individuals would receive vast protections under Exemption (b)(6) by merely having a relationship with a USAID-

funded organization, if the Court accepts such an argument. This is absurd and a clear perversion of Exemption (b)(6).

Ironically, USAID bases its argument in part on information Bigwood received under the FOIA from another United States Government funding entity, the National Endowment for Democracy (NED). This information was subsequently posted on one of Bigwood's websites. USAID claims that such information led to dangerous persecution of those individuals employed by the entities receiving such funding. Yet Bigwood has continued to receive several hundred documents from NED, all of which are inclusive of the names and other information about the organizations it funds in Venezuela and around the world. Only in certain rare instances has NED applied Exemption (b)(6) to protect the specific names of individuals included in certain documents, but never has the exemption been applied to the organizations and entities themselves. Therefore, Defendant USAID's argument is completely contradicted by the actions of other U.S. Government entities that do not see any danger or privacy violations in the release of similar information. Moreover, NED actually posts the names of the organizations it finances in Venezuela and around the world on its own website, www.ned.org, clearly not in violation of any privacy rights.

C. **There is No Danger of Disclosure in this Matter Nor Have Organizations that Receive USAID or US Government Funds in Venezuela Been Endangered or Persecuted Merely Because of such Funding**

Defendant USAID tries to convince the Court that groups receiving its funding in Venezuela are subject to some type of "persecution" from the Venezuelan government. Such arguments are unsubstantiated, shallow, and based on prejudice. Originally when

this case began, Plaintiff Bigwood respectfully and dutifully attempted to stick to the letter of the law and not to bring the subject matter of this case into the political realm. Defendant USAID was not similarly circumspect, and from the beginning, used superficial hearsay, opinion pieces in the foreign and U.S. press, unfounded data, and untested information to try to show this Court that a "climate of harassment and political danger" exists in Venezuela for those entities receiving its funding. This is a distortion of reality. Only one set of charges have been brought by the Federal Prosecutor in Venezuela against four directors of an entity funded by both the Defendant USAID and NED. The organization, Súmate, is not being charged under Venezuelan law with receiving funding from U.S. Government sources, but rather is accused of attempting to overthrow the democratically elected government of Venezuela. The crime alleged is "conspiracy to commit treason by using foreign government funding in an effort to overthrow the government system", and the case has yet to even come to a preliminary hearing. None of the parties charged are imprisoned, no sentences have been imposed, no persecution has occurred. This entity, Súmate, has publicly and openly disclosed its financing from both USAID and NED, as well as from other U.S. government agencies, such as the Department of Health and Human Services.

    Defendant USAID relies on political -- rather than legal -- arguments in its fruitless attempt to buttress its baseless case. The Court may be unfamiliar with the recent history in Venezuela. A summary follows.

    Venezuela is a constitutional democracy. In April 2002, there was a coup d'etat that briefly overthrew Venezuela's democratically elected President Hugo Chávez. He was reinstated in less than forty-eight hours due to mass protests from the majority of

Venezuelan citizens and loyal sectors of the armed forces that did not support the violent and illegal overthrow of the government. Many of the organizations that were involved in executing the coup were funded by NED during the prior six to twelve months leading up to the coup. According to the documents Bigwood obtained through the FOIA from NED, a majority of the organizations that had participated in the coup d'etat in April 2002 had received NED financing. This financing was actually increased, instead of being decreased, after the coup. A special one million dollar fund was granted to NED by the U.S. Department of State just two weeks after the April 2002 coup d'etat for its programs in Venezuela, and it used the monies to fund the very same organizations that had just participated in the illegal overthrow of a democratic and elected government. Such an action appears inconsistent with NED's stated noble mission of "promoting democracy abroad."

In June 2002, two months after the coup attempt, USAID installed an "Office for Transition Initiatives" and with a ten million dollar budget approved by the U.S. Department of State and the U.S. Congress, began funding similar organizations in Venezuela. The issue in this case is not the intention of NED or the Defendant USAID in its financing endeavors, but rather whether or not USAID's argument that the groups in Venezuela that receive its funding are persecuted based on that fact. What is clearly documented through intensive investigations, books, major media articles and U.S. Government texts, is the fact that many of these organizations that receive USAID and other funding have engaged in illegal activities. If there are groups, such as Súmate, that have been subject to court cases by the Venezuela government, it is because they have

12

participated in crimes, or they have otherwise violated the law of that nation, and it is not merely because they got U.S. Government funding.

USAID attempts to convince this Court that in Venezuela, groups that receive its financing are harassed and persecuted once their identities are disclosed. This, however, is unsubstantiated nonsense and simple deceit. Suspicion that a crime may have been committed is the real reason for Venezuelan government. That suspicion must be combined with sufficient evidence to support a suspicion about who committed it. It is not the duty of this Court to pass judgment on the decisions of foreign judiciary systems or governments when it comes to potential crimes or violations of law that may or may not have been committed and where no such final determinations have been made. USAID cannot provide the Court with any evidence of groups or individuals presently imprisoned for receiving U.S. Government financing, simply because no such evidence exists.

USAID's argument that disclosure of the names of the organizations it funds risks endangering employees is unfounded.

## II. USAID INFORMED PLAINTIFF JEREMY BIGWOOD THAT HE HAD EXHAUSTED HIS ADMINISTRATIVE REMEDIES REGARDING THIS FOIA REQUEST ON NOVEMBER 9 2004 AND THE ONLY RECOURSE WAS JUDICIAL REVIEW

On November 9, 2004, Defendant USAID sent Plaintiff Jeremy Bigwood a response to Bigwood's appeal of September 8, 2004. The November 9, 2004 communiqué discussed the withholding of information and documents requested by Bigwood under the Freedom of Information Act (FOIA). The last paragraph of that letter stated as follows:

13

"This constitutes USAID's final decision in this matter. You may, pursuant to 5 U.S.C. § 552(a)(4)(B), seek judicial review of this decision in the appropriated United States district court."

Relying on the November 9, 2004 letter, Bigwood filed this current matter before the Court, with the understanding that it was his only recourse under the law to obtain the information requested under FOIA. Defendant claims in its Reply that Bigwood failed to exhaust his administrative remedies by not appealing subsequent USAID FOIA office decisions on September 9, 2004 and March 25, 2005. However, Plaintiff's understanding was that those responses were a part of the same response he had received on August 20, 2004, and merely had just been delivered in separate parts. Plaintiff believed this to be true because he had only made one FOIA request to Defendant, and therefore had no reason to believe his original request had been divided into two entirely separate parts. Therefore, the September 8, 2004 response from Defendant telling Bigwood a "final decision" had been made and his own remaining recourse was judicial review, appeared to Bigwood to apply to his FOIA request as a whole.

Bigwood originally had made a series of requests under FOIA to Defendant in November and December of 2003. At the Defendant's request, Bigwood consented to consolidating these requests into one on February 26, 2004. Specifically, Bigwood's request was for:

- Documentation of USAID funding of any projects, organizations or other entities in Venezuela from 1998 to the present; and

14

- Any USAID analysis of the situation in Venezuela made from 1998 to the present.

Plaintiff always considered the two parts to constitute just one request. In fact, in USAID's correspondence with Bigwood, the request of February 26, 2004 was always referred to as just one request by USAID in its written and oral correspondence with Bigwood. Only one file number was assigned by USAID for Bigwood's request, suggesting to any reasonable reader that the request was viewed by the Agency as just one subject matter. In a letter dated March 11, 2004 from Defendant USAID to Bigwood, it explicitly stated that,

> "We have received your February 26, 2004 Freedom of Information Act (FOIA) request. The tracking number that has been assigned to your request is FOI-131/04."

Never did USAID state that Bigwood's FOIA request was viewed internally as two separate requests, nor could Bigwood have known this would be the case, since the request only had one file number and was always referred to in official correspondence by Defendant as a request in the singular. Bigwood's reasonably concluded that only one request was pending before Defendant. So when Bigwood received the November 9, 2004 letter from USAID indicating that a "final decision" had been made regarding his request and that he could seek "judicial review," he assumed this meant the request as a whole. Therefore, the Court should rule in favor of Bigwood's Cross Motion and release

15

all documents requested under the original FOIA request that were not previously released.

Bigwood also requests that should the Court determine Plaintiff did not exhaust his administrative remedies with regards to the portion of his request addressing internal annual and quarterly reports and analyses, memoranda or other documents relating to USAID funding of projects and organizations in Venezuela from 1998 to the present. Bigwood respectfully asks that the Court consider this part of the Complaint separately from the principal issues regarding the withheld names of organizations receiving USAID funding in Venezuela. Plaintiff therefore requests the Court not prejudice the main body of the Complaint referring to the misuse of Exemption (b)(6) should it rule in favor of Defendant regarding the exhaustion of administrative remedies.

## CONCLUSION

For the above reasons, Defendant USAID's improper withholding of the names of organizations and entities in Venezuela that receive its funding is a clear abuse and violation of FOIA Exemption (b)(6). The documents requested by Plaintiff Bigwood should be released with the requested information. If permitted, USAID's use of Exemption (b)(6) would pervert FOIA law to extend sacred privacy protections for individuals to organizations and entities that do not enjoy such protections under the law. Such a precedent would allow corporations, organizations and entities to receive protections under the law that are only afforded to persons.

USAID's position on Exemption (b)(6) would change the status of USAID to one that receives the same protections as U.S. Government entities such as the CIA and NSA

that engage in National Security efforts. With this change in secrecy-status, USAID, like NSA and CIA could avoid disclosing to the public information about most of their activities. Finally, Plaintiff respectfully requests the Court order Defendant to release all material withheld inappropriately under FOIA Exemption (b)(6) and to release all other documents that Bigwood has requested from Defendant since this Complaint was first filed on April 6th, 2006. These documents have been withheld for an unreasonable period of time in violation of the fundamental FOIA principles of timeliness and transparency.

Accordingly, the Court should enter summary judgment in favor of Jeremy Bigwood and deny Defendant's Motion for Summary Judgment.

Dated: 20th September, 2006.

Respectfully submitted,

_____
Jeremy Bigwood

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JEREMY E. BIGWOOD,            )
                              )
            Plaintiff,        )
                              )
      v.                      )
                              )   Civil Action No. 06-0635 (PLF)
                              )   (ECF)
                              )
UNITED STATES AGENCY FOR      )
INTERNATIONAL DEVELOPMENT,    )
                              )
            Defendant.        )
                              )
_____)

**ORDER**

UPON CONSIDERATION of the Defendant USAID's Motion for Summary Judgment, and the Plaintiff's Cross Motion for Summary Judgment and all accompanying exhibits and attachments;

IT APPEARING TO THE COURT that the information sought by Plaintiff is clearly in the public interest and is not subject to FOIA Exemption (b)(6) or any other exemption under FOIA regulations; and that the withholding of such information from Plaintiff is unlawful under the Freedom of Information Act and a clear abuse and violation of Exemption (b)(6); it is therefore

ORDERED that the Defendant USAID's Motion for Summary Judgment and Subsequent Reply be and hereby is denied; and further it is

ORDERED that the Defendant USAID timely release to Plaintiff all information in its possession responsive to Plaintiff's Freedom of Information Act request for documentation of USAID funding of any projects, organizations or other entities in Venezuela from 1998 to the present and any USAID analysis of the situation in Venezuela made from 1998 to the present.

ENTERED this _____ day of _____, 2006.

_____
United States District Judge

Copies to:

PLAINTIFF
JEREMY E. BIGWOOD
3200 16th Street NW #806
Washington, D.C. 20010
(202) 361-5000

DEFENDANT
MERCEDEH MOMENI
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, D.C. 20530
(202) 305-4851