UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
JEREMY E. BIGWOOD,                  )
                                    )
            Plaintiff,              )
                                    )
    v.                              )   Civil Action No. 06-0635 (PLF)
                                    )
UNITED STATES AGENCY FOR            )
  INTERNATIONAL DEVELOPMENT,        )
                                    )
            Defendant.              )
_____)


OPINION

        This matter is before the Court on cross motions for summary judgment.[1]  On March 30, 2007, the Court entered an Order and Judgment granting defendant's motion for

---

[1] The papers submitted in connection with these motions include: Defendant's Motion for Summary Judgment and Supporting Memorandum of Points and Authorities ("Def's Mot."); Defendant's Statement of Material Facts Not in Dispute ("Def's SMF"); Plaintiff's Cross Motion for Summary Judgment and Supporting Memorandum ("Pl's Mot."), which the Court will also treat as an opposition to defendant's motion for summary judgment; Defendant's Reply in Support of Defendants' Motion for Summary Judgment and Opposition to Plaintiff's Cross Motion for Summary Judgment ("Def's Reply"); and Plaintiff's Reply in Support of Cross Motion for Summary Judgment ("Pl's Reply").  The plaintiff "accepts the Defendant's Statement of Material Facts Not in Dispute." Pl's Mot. at 4.

        The relevant declarations submitted in connection with these motions include: Declaration of Joanne Paskar, Exh. to Def's Mot. ("Paskar Decl."); Declaration of Russell T. Porter, Exh. to Def's Mot. ("Porter Decl."); Supplemental Declaration of Joanne Paskar, Exh. to Def's Reply ("Paskar Supp. Decl."); and Supplemental Declaration of Russell T. Porter, Exh. to Def's Reply ("Porter Supp. Decl.").  Attachment 8 to the Paskar Declaration is a <u>Vaughn</u> Index for the 69 partially withheld documents included in the August 20, 2004 response to plaintiff's FOIA request ("<u>Vaughn</u> Index").

summary judgment and denying plaintiff's motion for summary judgment.  This Opinion explains the reasoning underlying that Order.

## I.  BACKGROUND

Plaintiff, *pro se*, brought this action against the United States Agency for International Development ("USAID" or "Agency") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking information regarding defendant's "funding of any projects, organizations or other entities in Venezuela from 1998 to Feb. 2004 and any USAID analysis of the situation in Venezuela from 1998 to Feb. 2004."  Complaint ¶ 1.  Plaintiff made several specific requests to defendant in November and December of 2003.  See id. ¶ 6.  Defendant requested that plaintiff narrow his requests, and he did so, on February 26, 2004.  See id. ¶¶ 7-8.  Defendant also granted plaintiff "news media" status.  See Def's SMF ¶ 2.

In a so-identified partial response to plaintiff's request, defendant produced some documents – 511 pages – to plaintiff on August 20, 2004, and excised some information and withheld some documents under FOIA Exemptions 4 and 6.  See Complaint ¶ 10; Def's SMF ¶ 5.  "Specifically, the Agency withheld documents to 'protect the identities of the individuals working for the local grant recipients' pursuant to Exemption (b)(6), and documents that may have contained certain financial information reflecting trade secrets and/or commercial or financial information, pursuant to Exemption (b)(4)."  Def's SMF ¶ 5.  By letter dated August 28, 2004, plaintiff administratively appealed these withholdings.  See id. ¶ 6.  Plaintiff alleges that defendant then released "documents relating to its funding of U.S.-based NGOs but continued to wrongfully withhold the names of organizations it funds in Venezuela under exemption b(6) and

neglected to respond to plaintiff's appeal in the case of the material withheld under exemption b(6)."  Complaint ¶ 12.

After defendant's response to the August 28, 2004 administrative appeal, no documents were being withheld under Exemption 4, only under Exemption 6.  See Def's SMF ¶¶ 7-8; Complaint ¶ 12; Paskar Decl. ¶ 10.  USAID argues that it withheld the information that it did because it "could not ignore the fact that local grantees' physical safety and/or liberty would be in danger if USAID disclosed the identity of those persons."  Def's Mot. at 7; see Paskar Decl. ¶¶ 16-17.  It is these withholdings that are at issue in this lawsuit.

In plaintiff's cross motion for summary judgment, he states that defendant "failed to provide internal annual and quarterly reports and analyses, memoranda, or other documentation relating to its funding of projects in Venezuela from 1998."  Pl's Mot. at 1-2.  Defendant asserts that it responded to these document requests on September 9, 2004 (a second partial response) and on March 25, 2005 (a final response), and that plaintiff did not administratively appeal from these responses.  See Paskar Supp. Decl. ¶¶ 2-4; Def's Reply at 3-4.[2]

Plaintiff does not mention the September 9, 2004 and March 25, 2005 responses in his Complaint; rather, he discusses only the August 20, 2004 response and his appeal therefrom.  See Complaint ¶¶ 10-11.  Plaintiff's August 28, 2004 letter states: "By means of this letter, I am appealing the August 20th, 2004 determination . . ."  August 28, 2004 Letter from

---

[2]   The September 9, 2004 second partial response and the March 25, 2005 final response are attached as exhibits to defendant's reply brief.

Jeremy Bigwood to USAID, Exh. 6 to Def's Mot.  "[E]xhaustion of administrative remedies is a mandatory prerequisite to a lawsuit under FOIA, which means that a requester under FOIA must file an administrative appeal within the time limit specified in an agency's FOIA regulations or face dismissal of any lawsuit complaining about the agency's response."  Wilbur v. Central Intelligence Agency, 355 F.3d 675, 676 (D.C. Cir 2004) (internal quotations omitted).  Moreover, a plaintiff may not amend his complaint through his opposition papers.  See Doe I v. State of Israel, 400 F. Supp. 2d 86, 100 (D.D.C. 2005).  The Court, therefore, will consider only those documents and withholdings at issue from the August 20, 2004 response to plaintiff's document request and his August 28, 2004 appeal therefrom, as pled in the complaint.  On this basis, the Court grants defendant's motion for summary judgment, with respect to any responses other than the August 20, 2004 response.

With respect to the documents and withholdings made in the August 20, 2004 response, defendant asserts that it concluded that "individuals working under USAID-funded projects are in fact subject to various forms of harassment, including false or wrongful arrest" and that the "prospect of harassment, embarrassment or worse is more than sufficient to protect from disclosure the individual identifying information at issue pursuant to Exemption 6."  Def's Mot. at 10; see Porter Decl. ¶¶ 9-12.  In addition to withholding the names of the individuals working at USAID grant recipients, defendant also withheld the names of the employing organizations.  See Def's Mot. at 12.  Defendant argues that this information must be withheld to protect the privacy interests of the individuals because "[i]n Venezuela, there are not a vast number of non-governmental organizations that receive USAID funding" and therefore the

disclosure of the fact that the employing organization is a USAID grant recipient could have an impact on the privacy rights of the employed individuals. Id. at 13. "The persons employed by local grant recipients could be viewed as 'CIA agents' and therefore harassed, imprisoned or worse." Id. (citing Porter Decl. Attachments A-N). Moreover, defendant argues, the individuals employed by the grantee organizations are easily identifiable once the names of the organizations are known. "Because the average size of the funded organizations is three to four, disclosing the names of the organization automatically identifies a finite group of individuals. Indeed, all of the organizations whose names have been withheld employ ten or less individuals." Def's Reply at 6-7 (citing Porter Supp. Decl. ¶ 2).

Plaintiff responds that he "is not asking the Agency to reveal any individuals' names in the responsive documents." Pl's Reply at 9. He appears to concede that the names of the individuals are protected by Exemption 6. See id.; Pl's Mot. at 13; see also Judicial Watch v. Food and Drug Admin., 449 F.3d 141, 152 (D.C. Cir 2006) (the withholding of employee names is acceptable under Exemption 6). Hence, the only information now in dispute is information with respect to the identities of the employing organizations. Plaintiff vigorously contests whether defendant may withhold information with respect to organizations or entities under Exemption 6. See Pl's Mot. at 2 (USAID "erroneously expands the exemption designed to protect *individuals* to also include government-funded *organizations*.") (emphasis in original). Defendant replies that "[w]ithholding the names of employing organizations in Venezuela that receive USAID funding is proper pursuant to exemption (b)(6) of the FOIA because disclosing the names or identifying information of these small organizations is tantamount to identifying

their employees." Def's Reply at 4 (citing Porter Supp. Decl. ¶¶ 2-3).  In other words, defendant is not claiming privacy rights under Exemption 6 directly on behalf of organizations, but rather it argues that it is protecting the privacy rights of individuals who work for organizations employing fewer than ten individuals by withholding the names of their employing organizations.  See id.

## II.  DISCUSSION

### A.  Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits or declarations, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P.  56(c).  Material facts are those that "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Tao v. Freeh, 27 F.3d 635, 638 (D.C. Cir. 1994).  The party opposing a motion for summary judgment, however, "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. "[A]ny factual assertions in the movant's affidavits will be accepted . . . as being true unless [the opposing party] submits his own affidavits or other documentary evidence contradicting the

assertion." Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992) (quoting Lewis v. Faulkner, 689 F.2d 100, 102 (7th Cir. 1982)).

FOIA cases appropriately may be decided on motions for summary judgment. Miscavige v. IRS, 2 F.3d 366, 368 (11th Cir. 1993); Farrugia v. Executive Office for United States Attorneys, Civil No. 04-0294, 2006 WL 335771 at *3 (D.D.C. Feb. 14, 2006); Rushford v. Civiletti, 485 F. Supp. 477, 481 n.13 (D.D.C. 1980). In a FOIA case, the Court may award summary judgment solely on the basis of information provided in affidavits or declarations when the affidavits or declarations are "relatively detailed and non-conclusory," SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981); see also Vaughn v. Rosen, 484 F.2d 820, 826 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974); Hertzberg v. Veneman, 273 F. Supp. 2d 67, 74 (D.D.C. 2003). Regardless of whether the Court relies on affidavits or declarations, an *in camera* review of the documents, or a combination of both, an agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt from the Act's inspection requirements." Goland v. Central Intelligence Agency, 607 F.2d 339, 352 (D.C. Cir. 1978); see also Students Against Genocide v. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001); Hertzberg v. Veneman, 273 F. Supp. 2d at 74.

*B. The Freedom of Information Act*

The fundamental purpose of the FOIA is to assist citizens in discovering "what their government is up to."  Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773 (1989).  The FOIA therefore strongly favors openness, since Congress recognized in enacting it that an informed citizenry is "vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978); see also Dep't of the Air Force v. Rose, 425 U.S. 352, 360 (1976) (purpose of the FOIA is "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny").  As such, "the Act is broadly conceived," EPA v. Mink, 410 U.S. 73, 79-80 (1973), and "disclosure, not secrecy, is the dominant objective of the Act."  Dep't of the Air Force v. Rose, 425 U.S. at 361.

Under the FOIA, an agency may withhold documents responsive to a FOIA request only if the responsive documents fall within one of nine enumerated statutory exemptions.  See 5 U.S.C. § 552(b); see also  Dep't of Defense v. Fed. Labor Relations Auth., 510 U.S. 487, 494 (1994).  Consistent with the Act's "goal of broad disclosure, these exemptions have been consistently given a narrow compass," Dep't of Justice v. Tax Analysts, 492 U.S. 136, 151 (1989), and there is a "strong presumption in favor of disclosure." Dep't of State v. Ray, 502 U.S. 164, 173 (1991).  The agency bears the burden of justifying any withholding, and the Court reviews the agency claims of exemption de novo.  See 5 U.S.C. § 552(a)(4)(B); see also Dep't of State v. Ray, 502 U.S. at 173-74; Assassination Archives and Research Ctr. v. Central Intelligence Agency, 334 F.3d 55, 57 (D.C. Cir. 2003); Summers v. Dep't of Justice, 140 F.3d

1077, 1079-80 (D.C. Cir. 1998).  To enable the Court to determine whether documents properly were withheld, the agency must provide a detailed description of the information withheld through the submission of a so-called "Vaughn index," sufficiently detailed affidavits or declarations, or both.  See Oglesby v. Dep't of the Army, 79 F.3d 1172, 1178 (D.C. Cir. 1996); Vaughn v. Rosen, 484 F.2d at 827-28.

Furthermore, the FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided . . . after deletion of the portions which are exempt," 5 U.S.C. § 552(b), unless the agency can demonstrate that the non-exempt portions of a document are "inextricably intertwined with exempt portions."  Trans-Pacific Policing Agreement v. United States Customs Serv., 177 F.3d 1022, 1027 (D.C. Cir. 1999) (quoting Mead Data Central, Inc. v. Dep't of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977)).  To withhold the entirety of a document, the agency must demonstrate that it cannot segregate the exempt material from the non-exempt and disclose as much as possible.  See Billington v. Dep't of Justice, 233 F.3d 581, 586 (D.C. Cir. 2000); Kimberlin v. Dep't of Justice, 139 F.3d 944, 949-50 (D.C. Cir. 1998).

### C.  Exemption 6

Exemption 6 of the FOIA permits the government to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Under this provision, the first question is whether the requested information is contained in personnel, medical or "similar" files.  See Dep't of State v. Washington Post Co., 456 U.S. 595, 600 (1982) ("[T]he phrase 'similar files' was to have a broad, rather than a narrow meaning."); see also Horowitz v. Peace Corps, 428

9

F.3d 271, 277 (D.C. Cir. 2005); Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002); Billington v. Dep't of Justice, 233 F.3d at 586. To determine what constitutes a "similar file" for purposes of Exemption 6, the D.C. Circuit has explained that:

> the Supreme Court requires that in applying the threshold test, we look "not to the nature of the files" that contain the information sought in a FOIA request, but to the nature of the information requested. The information need not be intimate; the threshold for application of Exemption 6 is crossed if the information merely "applies to a particular individual." As this court subsequently put it, the threshold is "minimal." Washington Post Co. v. HHS, 690 F.2d 252, 260 (1982) ("This ensures that FOIA's protection of personal privacy is not affected by the happenstance of the type of agency record in which personal information is stored.").

New York Times Co. v. Nat'l Aeronautics and Space Admin., 920 F.2d 1002, 1006 (D. C. Cir. 1990) (*en banc*) (citing Dep't of State v. Washington Post Co., 456 U.S. at 602) (internal citations omitted).

Second, if the information sought is contained in such personnel, medical or similar files, the Court must assess "whether the information is of such a nature that its disclosure would constitute a clearly unwarranted privacy invasion." Nat'l Ass'n of Home Builders v. Norton, 309 F.3d at 32 (citing Dep't of State v. Washington Post Co., 456 U.S. at 598). "To determine whether release of a file would result in a clearly unwarranted invasion of personal privacy, [the Court] must balance the private interest involved (namely, 'the individual's right of privacy') against the public interest (namely, 'the basic purpose of the Freedom of Information Act,' which is 'to open agency action to the light of public scrutiny')." Horowitz v. Peace Corps, 428 F.3d at 277-78 (quoting and citing Dep't of the Air Force v. Rose, 425 U.S. 352, 372-73 (1976)). The Court must balance the individual's interest in privacy against the public interest in

disclosure, keeping at the forefront the FOIA's "basic policy of opening agency action to the light of public scrutiny." Nat'l Ass'n of Home Builders v. Norton, 309 F.3d at 32 (quoting Dep't of State v. Ray, 502 U.S. at 175 (internal quotation marks omitted)).

Under Exemption 6, the "only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of FOIA, which is 'contributing significantly to public understanding *of the operations or activities of government*.'" Dep't of Defense v. Fed. Labor Relations Auth., 510 U.S. at 495 (emphasis in original) (quoting Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. at 775); see Horowitz v. Peace Corps, 428 F.3d at 278. Throughout this analysis, the burden remains on the government to justify any withholdings, since "under Exemption 6, the presumption in favor of disclosure is as strong as can be found anywhere under the Act." Nat'l Ass'n of Home Builders v. Norton, 309 F.3d at 32 (quoting Washington Post Co. v. Dep't of Health and Human Servs., 690 F.2d 252, 261 (D.C. Cir. 1982)); see also Ripskis v. Dep't of Hous. and Urban Dev., 746 F.2d 1, 3 (D.C. Cir. 1984) ("[T]he 'clearly unwarranted' language of Exemption 6 weighs the scales in favor of disclosure.").

*D. Analysis*

Plaintiff makes several arguments regarding why he believes USAID may not withhold information regarding the identities of the grantee organizations at issue here under Exemption 6 of the FOIA. He notes that "courts have held that only *individuals* have privacy rights," Pl's Mot. at 12, and that he "has explicitly requested only information about the *organizations* and entities funded by USAID." Pl's Mot. at 13. Plaintiff is correct on the law,

but he mistakes defendant's argument.  See Washington Post Co. v. Dept. of Agric., 943 F.

Supp. 31, 37 n.6 (D.D.C. 1996) (corporations and other business identities are not protected

under Exemption 6 because such business entities have no privacy interest whatsoever under that

exemption).  Defendant does not contend that organizations have privacy rights under

Exemption 6; rather, it argues that it "did not withhold the names of the employing organizations

in order to protect the interests of the organizations.  Instead, the Agency sought to avoid the

disclosure of the names of various small organizations *in order to preserve the safety of

individuals whose interests clearly fall within those intended to be protected* by exemption (b)(6)

. . . The Supreme Court has made clear that information applicable to a particular individual,

meets the threshold requirement for exemption (b)(6) protection."  Def's Reply at 5 (emphasis

added) (citing Dept. of State v. Washington Post Co., 456 U.S. at 601-02).

        In this case, the grantee organizations whose identities have been withheld are

very small; each of them has fewer than ten employees and the average number of employees is

between three and four.  See Porter Supp. Decl. ¶ 2.  In the highly unusual circumstances

presented here, the Court agrees with defendant  that "the release of the entities' name . . . [is]

tantamount to releasing the identities of the individuals[.]" Id. ¶ 3.  The Court therefore

concludes that the organizational identities of the particular USAID grantees, in the context of

the very limited factual circumstances presented by this case, is information "which applies to a

particular individual[.]"  New York Times Co. v. Nat'l Aeronautics and Space Admin., 920 F.2d

at 1006 (threshold for application of Exemption 6 is that information "applies to a particular individual").[3]

This conclusion is supported by the reasoning of the D.C. Circuit in its recent decision in Judicial Watch v. Food and Drug Admin., 449 F.3d at 152-53.  In that case, the FDA redacted information regarding the names of agency personnel and private individuals and companies that worked on the approval of the controversial drug mifepristone, including the names and street addresses of business partners associated with the manufacturing of the drug.  See Judicial Watch v. Food and Drug Admin., 449 F.3d at 152.  Noting that the Supreme Court has read Exemption 6 broadly and that the application of Exemption 6 does not "turn upon the label of the file which contains the damaging information," and relying upon affidavits detailing evidence of abortion clinic bombings and websites that encourage the murder and kidnapping of employees of companies that manufacture mifepristone, the D.C. Circuit held that the FDA "fairly asserted abortion-related violence as a privacy interest for both the names and addresses of persons *and businesses* associated with mifepristone."  Id. at 153 (emphasis added) (quoting Dept. of State v. Washington Post Co., 456 U.S. at 601).  Similarly, the organizational identity of

---

[3]  This threshold may be low but it is not non-existent.  See  Dept. of State v. Washington Post Co., 456 U.S. at 602 n. 4 ("[T]here are undoubtedly many government files which contain information not personal to any particular individual, the disclosure of which would nonetheless cause embarrassment to certain persons.  Information unrelated to any particular person presumably would not satisfy the threshold test."); Sims v. Central Intelligence Agency, 642 F.2d 562, 563, 573 (D.C. Cir. 1980), *reversed in part on other grounds*, 471 U.S. 159 (1985) (CIA records including "names of persons and institutions who conducted scientific and behavioral research" under CIA contracts for the MKULTRA project were not "similar files" protected by Exemption 6).

USAID grantees is information which the Court concludes in this case "applies to a particular individual," and thus the records requested are "similar files" which may be protected from disclosure by Exemption 6 of the FOIA.

There is no doubt that plaintiff's request is a straightforward one which directly comports with the core purposes of the FOIA – he requests information about foreign organizations receiving funding from our government, in a direct attempt to discern "what [his] government is up to."  Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. at 773.  The Court concludes, however, that the privacy interests of the individuals employed by the grantee organizations in this case outweigh plaintiff's interest in the information redacted from the documents produced – the identities of the grantee organizations that employ the individuals whose privacy rights the Court is considering.  As the D.C. Circuit has noted, individuals have an even stronger privacy interest in avoiding physical danger than in the accepted "privacy interest in the nondisclosure of their names and addresses in connection with financial information."  Judicial Watch v. Food and Drug Admin., 449 F.3d at 153 (quoting Lepelletier v. FDIC, 164 F.3d 37, 47 (D.C. Cir. 1999)).  Defendant has presented declarations that detail the potential harm to the employees if the identities of the grantee organizations at issue in this case are released.[4]  The Court agrees with the defendant that "a person avoiding

---

[4] The defendant summarizes the potential harm to individual employees of identified USAID grantees as follows:

> The team leader for USAID's Latin America and the Caribbean Office of Transition Initiatives, Russell Porter states in his affidavit (attached to the Agency's opening brief) that Venezuelans have suffered the following types of harm due to their connection with

harm to his life or liberty has a clear interest in the withholding of such information." Def's Reply at 7.  The Court therefore concludes that the release of the identifying information at issue in this case would be a "clearly unwarranted invasion of personal privacy" of the individual employees of the grantees.

By Order and Judgment of March 30, 2007, the Court granted defendant's motion for summary judgment and denied plaintiff's motion for summary judgment.

_____/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  April 10, 2007

---

the United States government: (1) Within days of information posted on the internet identifying grantees of the congressionally funded National Endowment of Democracy ("NED"), grantees were harassed, received threats, and were subject to court action for treason (Porter Decl., paragraph 9); (2) Venezuelan U.S.-funded grantees received threatening phone calls, and suffered both public and private threats (Porter Decl., paragraph 10); (3) Director of a USAID-funded human rights education project was questioned, intimidated, and watched by political police (Porter Decl., paragraph 11); (4) the Director of a pre-school that benefited from a USAID social impact project was threatened with having all future funding from the Venezuelan government suspended (Porter Decl., paragraph 11); (5) Venezuelan university students subjected to leaf-letting campaign stating that "'participants in the USAID-funded program would be identified and judged by the University community'" (Porter Decl., paragraph 17); and (6) Development Alternative Incorporated staff members were followed by and taunted as "CIA agents" and verbally threatened with office raids and monitoring. (Porter Decl., paragraph 18).

Def's Reply at 8; see Porter Decl. ¶¶ 8-11; Porter Supp. Decl. ¶¶ 2-3.